# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF AARNO OLAVI LIUKSILA | Magistrate No. 13-970 DAR |

## MEMORANDUM OPINION

This matter is before the court on the United States' request on behalf of the government of Finland, pursuant to 18 U.S.C. § 3184, to certify the extraditability of Mr. Aarno Liuksila. Criminal Complaint (Document No. 1). Mr. Liuksila filed a Motion to Dismiss the Criminal Complaint and Deny Finland's Extradition Request ("Motion") (Document No. 15) which is also pending for the court's determination. The court conducted hearings with respect to the government's request on January 13, January 16, January 22, and January 23, 2014, and heard argument with respect to Mr. Liuksila's motion to dismiss on April 28, 2014. Upon consideration of the parties' written memoranda, the evidence admitted, the arguments made by counsel on the record at the hearings, and the entire record herein, the undersigned will deny Mr. Liuksila's motion and will certify Mr. Liuksila's extraditability.

## BACKGROUND

Mr. Liuksila is sought by the Finnish government to answer to charges pending in Finland that arise out of certain housing shares that he owned, which the government alleges were "distrained" in 2001 to cover Mr. Liuksila's debts. *See* Government Exhibit 2 (filed at

Document No. 1-2). On October 23, 2007, a prosecutor in Finland submitted an application for a summons to the District Court in Turku, Finland, charging Mr. Liuksila with aggravated fraud by a debtor, in violation of Section 3 of Chapter 39 of the Criminal Code of Finland, or, in the alternative, with aggravated dishonesty by a debtor in violation of Section 1a of Chapter 39 of the Criminal Code of Finland. *Id.* Under Finnish law, both offenses are punishable by a term of imprisonment of at least four months and at most four years. *Id.*

With respect to the first charge, aggravated fraud by a debtor, the government of Finland alleges that during an "enforcement inquiry" in January 2002, after Mr. Liuksila had been served in May 2001 with a "distraint protocol" for the "distraint" of his shares in a housing company in order to cover his debts, Mr. Liuksila "untruthfully announced" that he sold the shares to three corporate entities on January 1, 2000, prior to the distraint. *Id.*[1] The government of Finland alleges that the sale was "fictitious," and that Mr. Liuksila "possessed the aforementioned shares . . . ." *Id.* In support of its allegation that the sale was "fictitious," the government of Finland proffers that identifiers associated with the purported buyers, such as "business codes" and "trade register numbers," were included in the bills of sale, but were not assigned to the entities until July 3, 2000, after the date of the purported sale. *Id.* The government further proffers that "[m]oney [w]as not used in the transactions; instead, FIM 550,000 has been recorded as a debt to Aarno Liuksila or his spouse and FIM 200,000 has been offset against loans to the shareholder. Aarno Liuksila has owned the aforesaid companies, and they have not been engaged in any business activities." *Id.*

---

[1] When referencing materials from the underlying proceedings in Finland, the undersigned relies on the English translations which were provided by the government of Finland.

The government of Finland further alleges that the housing shares at issue "entitle Mr. Liuksila to the possession" of an apartment and a "business premises," and that Mr. Liuksila rented the apartment to an individual and received rental payment in August 2000, after the date of the purported sale. *Id.* With respect to the alternative charge, aggravated dishonesty by a debtor, the government of Finland alleges that Mr. Liuksila transferred the housing company shares with knowledge that it "may harm the financial interests of his creditors." *Id.*

To provide further context with respect to the enforcement proceeding, Mr. Liuksila submitted an unsworn letter from Dr. Jussi Tapani, Professor of Criminal Law at the University of Turku in Turku, Finland. *See* Motion Exhibit E (Document No. 15-2). Dr. Tapani describes the process as follows:

> A debtor fails to pay a debt to a particular creditor, causing the creditor to seek and obtain a court judgment for the amount of the debt. After the judgment is entered, the district bailiff then convenes the enforcement inquiry, during which the bailiff summons the debtor to the enforcement office led by the senior district bailiff and questions the debtor about what assets may be used to satisfy the creditor's judgment. The debtor's attendance at this proceeding is compulsory (Chapter 3 Section 52-60 Enforcement Code), and the debtor's participation does not generally result in the discharge of his debt or in any other benefit to the debtor.

*Id.* at 2. Dr. Tapani characterizes the enforcement inquiry as "a somewhat informal proceeding," and notes that while the debtor is not sworn under oath, the Finnish penal code "criminalizes a debtor's concealment of assets or his provision of misleading information in connection with an enforcement inquiry." *Id.* Dr. Tapani advises that following a 2009 decision from the European Court of Human Rights, "the Finnish Supreme Court expressly recognized the right of a debtor subject to an enforcement inquiry to refuse to answer the bailiff's questions in certain situations." *Id.*

Following the Finnish prosecutor's October 23, 2007 application for a summons to the District Court in Turku, the District Court issued an order of detention on November 27, 2009, finding that "Mr. Liuksila is upon probable cause suspected of a serious economic offence" and noting that a warrant for his arrest was issued after he was "summoned as a defendant to a court session held on 16 November 2009, where he failed to appear." Government Exhibit 2. The Court, in its decision, acknowledged that Mr. Liuksila lives in the United States, but found that "there is reason to suspect that the person whose detention is requested will not voluntarily arrive in Finland for the purpose of prosecution." *Id.* The prosecutor in Finland subsequently submitted an application to the Finnish Ministry of Justice on December 16, 2009 "propos[ing]" that it request the extradition of Mr. Liuksila.

In February 2010, the Embassy of Finland, on behalf of the Finnish Ministry of Justice, submitted a formal request to the United States Department of State for the extradition of Mr. Liuksila. Government Exhibit 1 (filed at Document No. 1-3); *see also* Declaration of Samuel W. McDonald ("McDonald Declaration") ¶ 2. On December 30, 2013, an Assistant United States Attorney swore to a criminal complaint and requested a warrant for Mr. Liuksila, pursuant to 18 U.S.C. § 3184 and the relevant treaty provisions, to effectuate the government of Finland's request for extradition in connection with the pending charges in Finland. Affidavit in Support of Complaint (Document No. 1-1).

**APPLICABLE STANDARD**

"Through extradition proceedings, one nation turns over custody of a person at the request of another nation, pursuant to a treaty between the two nations." *Ward v. Rutherford*, 921 F.2d 286, 287 (D.C. Cir. 1990) (citation omitted); *see also* 18 U.S.C. § 3184. When the United

States is presented with a request for an individual's extradition, this court's role is "to determine whether 'the evidence [is] sufficient to sustain the charge under the provisions of the proper treaty or convention.'" *Ward*, 921 F.2d at 287 (citing 18 U.S.C. § 3184). Thus, this court does not "adjudicat[e] guilt or innocence," but instead conducts "a preliminary examination to determine whether a case is made out which will justify the holding of the accused and his surrender to the demanding nation." *Id.* (citations omitted) (quoting another source) (internal quotation marks omitted); *see also id.* at 288 (citing *Benson v. McMahon*, 127 U.S. 457, 463 (1888)). In accordance with the governing statute, if the court determines that the evidence is sufficient, it "shall certify the same, together with a copy of all the testimony taken before [it], to the Secretary of State . . . ." 18 U.S.C. § 3184.

Another member of this court outlined the findings necessary for certification, noting that:

> [a]n extradition certification is in order . . . where: 1) the judicial officer is authorized to conduct the extradition proceeding; 2) the court has jurisdiction over the fugitive; 3) the applicable treaty is in full force and effect; 4) the crimes for which surrender is requested are covered by the applicable treaty; and 5) there is sufficient evidence to support a finding of probable cause as to each charge for which extradition is sought.

*In the Matter of the Extradition of Zhenley Ye Gon*, 768 F. Supp. 2d 69, 73 (D.D.C. 2011) (citing *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925)). Upon certification by the court that the person is extraditable, the Secretary of State then determines whether to surrender the individual. *See id.* at 72.

**DISCUSSION**

The undersigned admitted into evidence the following exhibits offered by the United

States in support of the extradition request, upon finding that they were submitted by the Finnish Ministry of Justice and authenticated in accordance with 18 U.S.C. § 3190 and the relevant treaty provisions:

- Government Exhibit 1 (filed as Document No. 1-3): Verbal Note from the Embassy of Finland to the United States Department of State dated February 22, 2010; Extradition Treaty between the United States and Finland signed on June 11, 1976; Schedule of Offenses appended to the 1976 Treaty; Protocol to the Extradition Treaty between the United States and Finland, signed on December 16, 2004; and Annex to the Protocol

- Government Exhibit 2 (filed as Document No. 1-2): Letter dated February 1, 2010 from the Ministry of Justice of Finland; November 27, 2009 decision by the District Court in Turku, Finland, and an English translation of the document; October 23, 2007 application for a summons by a prosecutor in Finland, and an English translation of the document; December 16, 2009 application by a prosecutor in Finland to the Ministry of Justice, and an English translation of the document; and the text of Chapter 39 of Finland's Criminal Code

- Government Exhibit 3: Photograph of an individual, identified as Mr. Liuksila, provided by the government of Finland

- Government Exhibit 4: Letter dated July 18, 2012 from the Ministry of Justice of Finland to the United States Department of Justice's Office of International Affairs

- Government Exhibit 7: Letter dated January 27, 2014 from the Ministry of Justice of Finland to the United States Department of Justice's Office of International Affairs; Letter dated July 10, 2009 from the United States Department of Justice's Office of International Affairs to the Ministry of Justice of Finland; and the text of Sections 1, 2, 3, and 6 of Chapter 8 of Finland's Criminal Code

- Government Exhibit 8: Letter dated February 3, 2014 from the Ministry of Justice of Finland to the United States Department of Justice's Office of International Affairs

The United States also relied on the following exhibits, which were not provided by the Ministry of Justice of Finland:[2]

---

[2] For the reasons set forth on the record, the undersigned did not admit into evidence Government Exhibit 9.

- Included in Government Exhibit 1: Declaration of Samuel W. McDonald, Attorney-Adviser in the Office of the Legal Adviser for the Department of State

- Government Exhibit 5: Pretrial Services Report for United States District Court completed on January 9, 2014

- Government Exhibit 6: Additional Declaration of Ron B. Katwan, Attorney-Adviser in the Office of the Legal Adviser for the Department of State

***This matter is properly before this court***

The undersigned is a United States Magistrate Judge authorized to conduct this extradition proceeding, and this court has jurisdiction since Mr. Liuksila was "found" within this jurisdiction, as he was arrested in the District of Columbia at his residence. *See* 18 U.S.C. § 3184; *see also Ward*, 921 F.2d at 288-89.

The United States Code provisions "relating to the surrender of persons who have committed crimes in foreign countries shall continue in force only during the existence of any treaty of extradition with such foreign government." 18 U.S.C. § 3181(a). The United States and Finland signed an Extradition Treaty on June 11, 1976, and following an extradition agreement between the United States and the European Union signed in 2003, the United States and Finland executed a supplemental Protocol and Annex to the Extradition Treaty. An official of the United States Department of State attests that the treaty and the supplemental provisions are "in full force and effect between the United States and Finland." McDonald Declaration ¶ 2. The undersigned thus finds, and indeed neither party disputes, that the governing treaty is in full force and effect. *See Ye Gon*, 768 F. Supp. 2d at 80 (citations omitted) ("The Department of State's determination as to the validity of a treaty is entitled to deference, as is their determination as to extraditions generally.").

### *Mr. Liuksila is charged with an extraditable offense*

Article 1 of the Protocol and Annex governs the determination of whether the alleged offenses are extraditable. *See* McDonald Declaration ¶ 5. An official of the United States Department of State avers that "[t]he offenses for which [Mr. Liuksila's] extradition is sought are covered under Article 1 of the Protocol and Annex . . . ." *Id.*

Article 1(b) of the Protocol provides that "Article 4 of the U.S.-EU Extradition Agreement, as set forth in Article 1 of the Annex to this Protocol, shall govern the scope of extraditable offenses, replacing Articles 2 and 3(3) of the 1976 Extradition Treaty[.]" Government Exhibit 1. Under Article 1(A)(1) of the Annex, and relevant to this action, "[a]n offense shall be an extraditable offense if it is punishable under the laws of the requested and requesting States by deprivation of liberty for a maximum period of more than one year or by a more severe penalty." This principle, known as "dual criminality," requires the court to determine whether the conduct alleged is a serious crime in both countries. In *United States v. Sensi*, this Circuit observed that "[t]he law does not require that the name by which the crime is described in the two countries shall be the same; *nor that the scope of the liability shall be coextensive*, or, in other respects, the same in the two countries. It is enough if *the particular act charged* is criminal in both jurisdictions." 879 F.2d 888, 894 (D.C. Cir. 1989) (emphasis in original) (quoting *Collins v. Loisel*, 259 U.S. 309, 312 (1922)); *see also Ye Gon*, 768 F. Supp. 2d at 81. Article 1(A)(3)(a) of the Annex codifies this principle, stipulating that "an offense shall be considered an extraditable offense . . . regardless of whether the laws in the requesting and requested States place the offense within the same category of offenses or describe the offense by the same terminology[.]"

The government of the United States first averred that the alleged Finnish offenses "correspond to the concealment of assets and false oaths and claims related to actual or contemplated bankruptcy proceedings under United States law pursuant to Title 18, United States Code, Section 152." Memorandum of Law in Support of Extradition (Document No. 9) at 2, 9. The government subsequently withdrew this contention, and now submits that Mr. Liuksila's alleged conduct would be punishable under 18 U.S.C. § 1341 (mail fraud), § 1343 (wire fraud), § 1001 (false statements), and under District of Columbia Code § 22-3221 (fraud). *See* Government's Memorandum of Law in Opposition of the Motion to Dismiss the Complaint and Deny Extradition ("Opposition") (Document No. 19) at 2, 2 n.1.

Mr. Liuksila contends that the dual criminality requirement has not been met, maintaining that the "crux" of the charges against him involve "allegedly failing to accurately account for certain of his assets in connection with an attempt to collect a private debt." Defendant's Reply in Support of His Motion to Dismiss the Criminal Complaint and Deny Finland's Extradition Request ("Reply") (Document No. 22) at 4; *see also id.* at 23 (characterizing the alleged criminal conduct as "failure to fully disclose his assets in connection with private debt collection proceedings"). Mr. Liuksila contends that "[t]he Finnish offenses for which [he] is sought . . . not only fail to share an essential character with any corresponding U.S. offense, they offend the longstanding American rejection of the use of criminal sanctions to collect private debts." Defendant's Memorandum in Support of His Motion to Dismiss the Criminal Complaint and Deny Finland's Extradition Request ("Memorandum") (Document No. 15-1) at 13; *see also* Reply at 23. Mr. Liuksila represents that the underlying debt "will be fully satisfied no later than October 2015." Reply at 23; *see also id.* at 4 n.1.

Under laws of the United States prohibiting mail and wire fraud, the government would have to prove that Mr. Liuksila "devised or intend[ed] to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," and that he utilized wire communications or the mail to further the scheme. 18 U.S.C. §§ 1341, 1343; *see also United States v. Coughlin*, 610 F.3d 89, 97 (D.C. Cir. 2010); *United States v. Maxwell*, 920 F.2d 1028, 1035 n.8 (D.C. Cir. 1990) (citation omitted) (noting that "the elements that must be proved under the wire fraud statute, 18 U.S.C. § 1343, and under the mail fraud statute, 18 U.S.C. § 1341, are identical"); *United States v. Singhal*, 876 F. Supp. 2d 82, 100 (D.D.C. 2012).

While Mr. Liuksila characterizes the alleged conduct as "failure to affirmatively disclose his assets to his creditors," Reply at 22, the undersigned finds that the conduct alleged in support of the first charge – aggravated fraud by a debtor – could be characterized as a scheme to defraud, or to obtain property by means of false or fraudulent pretenses. As described above, the government of Finland alleges that Mr. Liuksila gave "false and misleading information" in an enforcement proceeding in order to obtain financial benefit from housing shares that were subject to distraint. *See* Government Exhibit 2. More specifically, the government of Finland alleges that Mr. Liuksila devised "fictitious" transactions to transfer the shares to corporate entities that he owned, and then falsely represented during the course of the enforcement proceeding that he sold the shares before they were subject to distraint.[3] With respect to the circumstantial evidence of Mr. Liuksila's intent, the government alleges that the bills of sale contain business codes and

---

[3] Mr. Liuksila questions the relevance of a sale that allegedly occurred prior to the enforcement inquiry, Reply at 22, but in doing so, does not acknowledge the government's allegation that the bills of sale were drafted to reflect that the sale occurred before the shares were subject to distraint.

trade register numbers that were not assigned to the corporate entities until after the purported sale, and that Mr. Liuksila received rental payment from a tenant in connection with one of the properties at issue after the date of the purported sale.

In *United States v. Sai-Wah*, another district court considered the extradition of an individual to Hong Kong to face charges of "Evasion of Liability by Deception" for allegedly giving "post-dated checks, which were later rejected due to insufficient funds . . . ." 270 F. Supp. 2d 748, 749 (W.D.N.C. 2003). The court rejected the government's argument that the underlying facts "indicate[d] fraud, which is clearly criminal under federal law and the laws of every state," and cited another court's previous observation that "[t]he problem with the government's arguing on this score [in favor of 'dual criminality'] is that no property was obtained, taken or withheld by virtue of the issuance of the four checks upon which the warrant's charge is premised." *Id.* at 751. In contrast, in *In the Matter of the Extradition of Chan Hon-Ming*, a court certified the extraditability of an individual sought by Hong Kong who similarly argued that "Evasion of Liability by Deception has no analogous crime in the United States and is therefore not an extraditable offense." No. 06-296, 2006 WL 3518239, at *1, 4 (E.D.N.Y. Dec. 6, 2006). The court, distinguishing the circumstances presented in *Sai-Wah*, found that "the charge against Chan stems from the fraudulent misrepresentations he made in connection with [money] he already owed to SCB as credit card debt." *Id.* at *5.

Here, with respect to the first charge, the government of Finland does not merely allege that Mr. Liuksila avoided payment of his debt. Rather, it alleges that he devised transactions and made false statements in order to gain financial benefit from assets that were subject to distraint. The undersigned thus concludes that this alleged conduct could give rise to a charge of mail or

wire fraud under 18 U.S.C. § 1341 or § 1343. *Cf. Parsons v. Feather*, No. 13-01905, 2014 WL 2123983, at *1-2 (D. Or. May 19, 2014) (finding that the "essential character" of the offense charged by the government of Mexico was "employing deceit toward or creating a mistaken belief in another person in order to obtain from that person an object of value or profit," and that the "same" essential character of conduct is criminalized by our federal wire and mail fraud statutes). The absence of allegations concerning Mr. Liuksila's use of mail or wire communication in furtherance of the alleged fraudulent scheme does not affect the court's analysis. *See* Annex Article 1(A)(3)(b) ("[A]n offense shall be considered an extraditable offense . . . regardless of whether the offense is one for which the United States federal law requires the showing of such matters as interstate transportation, or use of the mails or of other facilities affecting interstate or foreign commerce, such matters being merely for the purpose of establishing jurisdiction in a United States federal court[.]"); *see also Sensi*, 879 F.2d at 894 ("[T]he significance of his use of the mails and of interstate transportation and facilities is 'jurisdictional only,' in that it permits him to be prosecuted under federal law.").

The undersigned thus concludes that the first charge for which Mr. Liuksila is sought is an "extraditable" offense under the governing treaty. However, with respect to the second, or alternative, charge of aggravated dishonesty by a debtor, the undersigned finds that the allegation that Mr. Liuksila transferred the shares "knowing that due to his already existing and expected financial difficulties his act may harm the financial interests of his creditors," *see* Government Exhibit 2, does not rise to the level of a fraudulent scheme. The undersigned further finds that the limited proffer by the government of Finland in support of the alternative charge of aggravated dishonesty by a debtor is insufficient to allow this court to conclude that the offense

could be prosecuted under the United States or District of Columbia Code provisions identified by the government.

### *Extradition is not precluded by the statute of limitations under the laws of the United States or Finland*

Mr. Liuksila contends that extradition is barred under Article 7 of the treaty because the statute of limitations under Finnish law has expired and because the statue of limitations "for any corresponding" offense under United States law has expired. Memorandum at 3-7. Article 7(2)(a) of the treaty provides that "[e]xtradition shall be refused if . . . the prosecution or the enforcement of the penalty for the offense for which extradition is requested has become barred by lapse of time according to the law of the requesting or requested State[.]"

<u>Statute of limitations under Finnish law</u>

For the alleged offenses, which carry a maximum term of incarceration of four years under Finnish law, the statute of limitations is ten years under Chapter 8, Section 1 of the Finnish Criminal Code. Government Exhibit 7. Chapter 8, Section 3 provides that "[c]harges are deemed to have been brought in a manner interrupting the period of limitation when the person to be prosecuted as [sic] been given lawful notice of the summons or a request for his or her punishment has been made when he or she is personally present at a trial." *Id.* Mr. Liuksila submits that the alleged offense conduct took place "more than *twelve* years ago," and that the court cannot determine that the statute of limitations is tolled under Chapter 8, Section 3 because the government "has not produced competent proof in this proceeding to demonstrate that service upon Mr. Liuksila was made." Memorandum at 6.

In a letter dated February 3, 2014, a representative of the Finnish Ministry of Justice

proffered that under Finnish law, the statute of limitations for both offenses was "tolled on June 26, 2009 when Mr. Liuksila was served a summons to appear before the District Court of Turku to answer the charges brought against him." Government Exhibit 8. Mr. Liuksila contends that this "unsworn hearsay statement" offered by the government "is not competent proof." Memorandum at 7. The undersigned need not address the sufficiency of the Ministry of Justice's letter because, as the government notes, the District Court in Turku found that Mr. Liuksila was "summoned as a defendant to a court session held on 16 November 2009, where he failed to appear," and subsequently issued a "warrant of arrest" for Mr. Liuksila. Government Exhibit 2; *cf. Ye Gon*, 768 F. Supp. 2d at 88-89 (finding it "inconceivable" that the United States and Mexico "would intend that judicial findings sufficient in themselves in either country would somehow not be sufficient to warrant extradition from one to the other"). Therefore, upon consideration of the finding of the District Court in Turku, the undersigned concludes that Mr. Liuksila was summoned to appear before the District Court in Turku to answer to the charges, and that the statute of limitations is thus tolled under Finnish law.

### Statute of limitations under United States law

The parties are in agreement that the applicable statute of limitations for the alleged conduct would be five years under United States law. *See* Opposition at 19; Reply at 6; *see also* 18 U.S.C. § 3282 ("Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."). The last date of the alleged offense conduct is January 24, 2002. *See* Government Exhibit 2. The government of Finland brought the charges against Mr. Liuksila, through the application for a

summons, approximately five years and nine months later, on October 23, 2007.

The United States submits, however, that the statute of limitations would be tolled pursuant to 18 U.S.C. § 3290, which provides that "[n]o statute of limitations shall extend to any person fleeing from justice." More specifically, the United States contends that Mr. Liuksila's "absence" from the charging jurisdiction "as early as 2005" is sufficient to toll the statute of limitations. *See* Opposition at 19-21. Mr. Liuksila counters that the statute of limitations cannot be tolled pursuant to section 3290 because "he has lived openly in the United States for the entire relevant period," and "his whereabouts and identity have been known to both the governments of Finland and the United States." Memorandum at 5 n.3; *see also* Reply at 2.

Most Circuits to interpret the language of section 3290 "have concluded that a person's mere absence from a jurisdiction is insufficient, by itself, to demonstrate flight" and have held that "there must be proof of the person's intent to avoid arrest or prosecution." *United States v. Florez*, 447 F.3d 145, 150-51 (2d Cir. 2006) (citing cases from the 1st, 2nd, 6th, 7th, 9th, 10th, and 11th Circuits); *see also id.* at 151 (quoting *Jhirad v. Ferrandina*, 486 F.2d 442, 444-45 (2d Cir. 1973)) ("[I]n the context of an extradition proceeding, 'the phrase 'fleeing from justice' carries a common sense connotation that only those persons shall be denied the benefit of the statute of limitations who have absented themselves from the jurisdiction of the crime *with the intent of escaping prosecution.*'"). Mr. Liuksila relies on cases from these Circuits in support of his argument that "mere absence" from the charging jurisdiction is insufficient to toll the statute of limitations, and that the government must demonstrate intent. *See* Memorandum at 5 n.3; Reply at 8-9.

This Circuit, however, has not yet adopted such a standard. In *McGowen v. United*

*States*, this Circuit, interpreting the tolling provision now codified at section 3290, held that "'[t]o be a fugitive from justice . . . it is not necessary that the party charged should have left the state in which the crime is alleged to have been committed, after an indictment found, or for the purpose of avoiding a prosecution anticipated or begun, but simply that having within a state committed that which by laws constitutes a crime, when he is sought to be subject to its criminal process to answer for his offence, he has left its jurisdiction, and is found within the territory of another.'" 105 F.2d 791, 792 (D.C. Cir. 1939). The *McGowen* Court determined that the defendant "when he left the District after committing forgery, was a 'person fleeing from justice,' regardless of his motive in leaving," and rejected the argument that the defendant was not "fleeing" because he was incarcerated in Virginia. *Id.* The Circuit subsequently reiterated its holding. *See Green v. United States*, 188 F.2d 48 (D.C. Cir. 1951) (quoting *McGowen*, 105 F.2d at 792) ("'The question is not whether he remained out of the District for any particular reason, or at all; it is enough that he did not remain for three years within the District.'"); *id.* at 49 (finding that the statute of limitations did not run during the appellant's "absence" from the District of Columbia, and noting that "[t]his is true even if he did not, as apparently he did, leave to avoid prosecution"); *see also Taylor v. United States*, 238 F.2d 259, 260 (D.C. Cir. 1956) ("The contention of appellant that he is entitled to the protection of the statute of limitations is foreclosed by *Green v. United States* . . . and *McGowen v. United States* . . . .").

In *United States v. Singleton*, this Circuit interpreted the language of section 3290 under different circumstances – the defendant was not alleged to have left the charging jurisdiction – and rationalized that "[i]t would be neither logical nor supportive of the policy underlying section 3290 to interpret the law in such a way that one who leaves and is found without the jurisdiction

is 'fleeing justice' regardless of his intent, while one who actively evades authorities and conceals himself within the jurisdiction can receive the benefit of the statute of limitations." 702 F.2d 1159, 1169 (D.C. Cir. 1983). The Circuit thus found "that on the facts of th[e] case, the Government failed to show that [the defendant] acted with the intention of avoiding prosecution," and thus affirmed the district court's dismissal of the indictment that was filed after the statute of limitations had run. *Id.* at 1170. The Court did not revisit the *McGowen* Court's holding, concluding that it was "unnecessary . . . to decide whether the rule of law set forth in th[o]se early cases – that mere absence from the jurisdiction is sufficient to toll the statute – retains its vitality today." *Id.* at 1169 n.32. Therefore, under the law of this Circuit, when arguing that the statute of limitations is tolled pursuant to section 3290, the government must demonstrate the defendant's intent to avoid prosecution if he or she has not left the charging jurisdiction, but is not required to demonstrate intent if the defendant has left the jurisdiction. *See id.* at 1169-70; *McGowen*, 105 F.2d at 792; *see also Florez*, 447 F.3d at 151 (citations omitted) ("Although decisions by the Eighth and D.C. Circuits suggest that the specific intent to avoid prosecution is not essential to toll a statute of limitations on account of flight . . . the latter court, at least, has tempered this view when the evidence of flight does not show actual departure from the jurisdiction.").

Here, the government submits that "[b]y as early as 2005, [Mr. Liuksila], in accordance with his own statements, was in the United States, and outside of the jurisdiction of Finland . . . ." Opposition at 20. Mr. Liuksila admits that he traveled to the United States in 2005 for certain family obligations, and that he "returned to the United States on a G-4 Visa" in 2006. Reply at 12-13. As Mr. Liuksila notes, *see id.* at 9, the *McGowen* Court's interpretation of the

tolling provision curtails the protections afforded to the accused in extradition proceedings where the individual, given the nature of the proceedings, is always absent from the charging jurisdiction.[4]  This court, however, is bound by the Circuit's interpretation of section 3290.  Mr. Liuksila cites *Singleton* and *United States v. $6,976,934.65*, 554 F.3d 123 (D.C. Cir. 2009) in support of his contention that the D.C. Circuit has called into question the *McGowen* Court's holding.  Reply at 7.  However, in *Singleton*, the Court declined to overturn the holding in *McGowen*, *see* 702 F.2d at 1169 n.32, and in *$6,976,934.65*, the Court applied the Second Circuit's standard – which requires a showing of intent – because the underlying criminal complaint was filed in the Southern District of New York, *see* 554 F.3d at 132-33.

Having determined that the statute of limitations was tolled after Mr. Liuksila's departure from Finland, the undersigned need not consider the government's alternative argument, *see* Opposition at 21-23, that Mr. Liuksila exhibited an intent to avoid prosecution in Finland.

### *Probable cause to support the charge*

As discussed above, an extradition hearing "is not the occasion for an adjudication of guilt or innocence," but rather, "a preliminary examination to determine whether a case is made out which will justify the holding of the accused and his surrender to the demanding nation." *Ward*, 921 F.2d at 287 (citations omitted) (quoting another source) (internal quotation marks

---

[4] While Mr. Liuksila contends that such a standard has not been applied by a court in the context of an extradition proceeding, *see* Reply at 9, the undersigned observes that the Eighth Circuit, reviewing an extradition order, held that "this Circuit follows the absence from the jurisdiction test of fugitive status; intent to avoid arrest or prosecution is not required." *See In the Matter of the Extradition of Assarsson*, 687 F.2d 1157, 1162 (8th Cir. 1982) (citation omitted).  Although the Court also discussed the district court's findings with respect to the defendant's intent, it determined that he "is a fugitive because he has left Sweden." *Id.*  In so determining, the Court acknowledged that "[i]n international extradition cases the fugitive is necessarily physically absent from the requesting jurisdiction." *Id*. at 1162 n.9.

omitted). This court is thus tasked with "determining if there is probable cause to hold a defendant to answer for the commission of an offense." *Id.* (citation omitted). In the context of a preliminary hearing that this court would typically conduct, this Circuit has advised that "[p]robable cause signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *Coleman v. Burnett*, 477 F.2d 1187, 1202 (D.C. Cir. 1973) (footnote omitted).

In its application for a summons and application for extradition, the government of Finland describes the documentary evidence it contends supports the charges against Mr. Liuksila, which includes, *inter alia*, the distraint protocol for the housing shares at issue, the record of the enforcement inquiry, bills of sale for the housing shares, tax forms for the corporate entities that purportedly purchased the shares, apartment rental agreement for one of the units associated with the housing shares, bank statements reflecting a tenant's payment to Mr. Liuksila, and portions of the Trade Register documenting the registration of the corporate entities. *See* Government Exhibit 2. The government of Finland describes what it contends each piece of evidence will be offered to prove. *See id.* It further represents that testimonial evidence from the following individuals supports the charges: Mika Salonen, who will testify regarding "the methods of payment for the sales prices entered into the account books of the companies"; Kim Sjoholm, who will testify regarding "the enforcement inquiry situation"; Laura Poranen, who will testify regarding her "rental of the apartment, the landlord, the bank account on which the rent was paid"; and Hannu Kaijalainen, who will testify regarding the corporate entities who purportedly purchased the housing shares. *See id.*

Upon consideration of the allegations against Mr. Liuksila in the charging document –

application for a summons – supported by reference to a comprehensive list of "oral" and "written" evidence, and the proffer of evidence in the December 16, 2009 application for extradition, *see* Government Exhibit 2, the undersigned finds that the government of Finland has established probable cause for the charge of aggravated fraud by a debtor.[5] *See Ye Gon*, 768 F. Supp. 2d at 89 (citations omitted) (collecting cases in which courts have found the requesting countries' summaries of evidence sufficient to support a probable cause finding).  In making its probable cause determination, the court also bases its finding on the photograph provided by the government of Finland to establish Mr. Liuksila's identity, *see* Government Exhibit 3, and notes that Mr. Liuksila has not contested the allegation that he is the individual charged in Finland.

**CONCLUSION**

For the foregoing reasons, the court finds that the requirements for extradition are satisfied.  Accordingly, the court will deny Mr. Liuksila's Motion to Dismiss the Criminal Complaint and Deny Finland's Extradition Request (Document No. 15), and will certify Mr. Liuksila's extraditability as to the charge of aggravated fraud by a debtor.  A separate order and certificate of extraditability accompanies this Memorandum Opinion.

                                                                             /s/
                                                DEBORAH A. ROBINSON
                                                United States Magistrate Judge

November 7, 2014

---

[5] Having concluded that the alternate charge of aggravated dishonesty by a debtor is not extraditable, the undersigned makes no finding with respect to that charge.