THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF AARNO OLAVI LIUKSILA | Magistrate No. 13-970 (DAR) |

**MEMORANDUM OPINION**

This matter is before the court on the United States' request on behalf of the government of Finland, pursuant to 18 U.S.C. § 3184, to certify the extraditability of Defendant Aarno Liuksila. Criminal Complaint (Document No. 1). The court filed a Memorandum Opinion on November 7, 2014 denying Defendant's Motion to Dismiss the Criminal Complaint and Deny Finland's Extradition Request (Document No. 15). *See In re Liuksila*, Magistrate No. 13-970, 2014 WL 5795244 (D.D.C. Nov. 7, 2014). Defendant subsequently filed a Motion to Stay Enforcement of Any Extradition Order Pending Petition for *Habeas* Relief (Document No. 29) and a Motion for Reconsideration (Document No. 35), both of which are pending for the court's consideration. The court conducted a hearing on February 4, 2015 and heard argument with regard to Defendant's Motion for Reconsideration. Upon consideration of the parties' written memoranda, the evidence admitted, the arguments made by counsel on the record at the hearings, and the entire record herein, the court will deny Defendant's motions and will certify Defendant's extraditability.

**BACKGROUND**

Defendant is sought by the Finnish government to answer charges pending in Finland that arise out of certain housing shares that he owned, which the government alleges were "distrained" in 2001 to cover Defendant's debts. *See* Document No. 1-2. After a hearing on

Defendant's extradition to Finland, which concluded on April 28, 2014,[1] and upon consideration of the written submissions, the court denied Defendant's Motion to Dismiss the Criminal Complaint and Deny Finland's Extradition Request (Document No. 15) by a Memorandum Opinion (Document No. 27) filed on November 2, 2014.  *See In re Liuksila*, 2014 WL 5795244. After filing the November 7, 2014 Memorandum Opinion, the court had not yet certified Defendant's extradition to Finland when he filed both a Motion to Stay Enforcement of Any Extradition Order Pending Petition for *Habeas* Relief ("Defendant's Motion to Stay") (Document No. 29) and a Motion for Reconsideration (Document No. 35).  Subsequently, the court scheduled oral argument with regard to Defendant's Motion for Reconsideration (Document No. 35), which was conducted on February 4, 2015.[2] *See* 12/22/2014 Minute Entry; 02/04/2015 Minute Entry.

Defendant argues, through written submissions (Document Nos. 35, 40) and oral proffer at the February 4, 2015 hearing, that the court erred in its decision to extradite Defendant to Finland for the reasons set forth in the November 7, 2014 Memorandum Opinion.  Defendant argues that the applicable statute of limitations has run with regard to the charges with which he

---

[1] The court conducted four previous hearings with regard to Defendant's extradition. *See* 01/13/2014 Minute Entry; 01/16/2014 Minute Entry; 01/22/2014 Minute Entry; and 01/23/2014 Minute Entry; *see also In Re Liuksila*, 2014 WL 5795244, at *1.

[2] At a status hearing conducted on December 22, 2014, the court granted in part Defendant's Motion to Stay (Document No. 29), based on the agreement of the parties that Defendant's bail status on personal recognizance should be continued.  *See* 12/22/2014 Minute Order.  With regard to the remainder of Defendant's Motion to Stay, Defendant initially contended that a stay of enforcement of any extradition order from this court was warranted pending his petition for *habeas* relief, given that "[Defendant's] case presents close questions of law on which he is likely to prevail."  *See* Defendant's Motion to Stay at 1.  However, the Government, in its response to Defendant's Motion to Stay, contended that staying the current proceedings pending *habeas* review is superfluous, given the statutory safeguards and procedures as contemplated by Congress with regard to extradition matters, essentially providing the stay that Defendant sought.  See Government's Memorandum Opposing Fugitive's Motion to Stay Certification Order ("Government's Opposition to Stay") (Document No. 32) at 2-4.  In light of the Government's assurances, Defendant voluntarily withdrew his argument in favor of a stay of the proceedings before the court pending the outcome of his *habeas* petition.  *See* Defendant's Reply in Support of His Motion for Stay and Continuation of His Bail Status (Document No. 34) at 2.  Therefore, Defendant's Motion for Stay (Document No. 29) is hereby denied as moot.

has been charged in Finland.  *See* Defendant's Memorandum in Support of His Motion for Reconsideration ("Defendant's Memorandum") (Document No. 35-1) at 6-7.  Therefore, the court should have denied Finland's extradition request.  *Id.*  At the core of his contention, Defendant takes issue with the court's reliance on the "mere absence" standard as articulated in *McGowen v. United States*, 105 F.2d 791 (D.C. Cir. 1939).  *Id.* at 2; *see also In re Liuksila*, 2014 WL 5795244, at *8.  In *McGowen*, the Circuit held that a criminal defendant's "mere absence" from a jurisdiction is sufficient enough to toll the applicable statute of limitations with regard to the crime(s) with which he or she has been charged.  105 F.2d 791.  Defendant contends that the facts of the present case are sufficiently distinguishable from *McGowen* to justify a departure from the law established therein.  In support of this contention, Defendant states:

> This Circuit has never previously applied a mere absence tolling standard where, as here, (1) an individual affirmatively notified the relevant authorities of his intention to leave the jurisdiction prior to his travel and the authorities facilitated his departure, (2) the relevant authorities were at all times aware of the individual's whereabouts and had the ability to immediately commence criminal proceedings, and (3) the individual maintained regular contact with the relevant authorities following his departure and voluntarily cooperated with their requests.  These facts should be deemed to preclude tolling under 18 U.S.C. § 3290, even assuming that *McGowen* is good law in this Circuit.

Defendant's Memorandum (Document No. 35-1) at 3.  Moreover, Defendant avers that his contention is supported by new evidence in the form of a sworn affidavit from Finnish Detective Inspector Kirsi Alaspää.  *See* Defendant's Liuksila's Reply in Support of His Motion for Reconsideration ("Defendant's Reply") (Document No. 40) at 7-9.[3]  With regard to the affidavit, Defendant represents:

---

[3] The court notes, that at the February 4, 2015 hearing, Defendant offered the affidavit of Detective Inspector Alspää into evidence as Defense Exhibit 1, without objection from the Government.  Additionally, the Government entered into evidence what has been labeled as Government's Exhibit 1, which consists of a photocopy of two sides of a United States Postal Service confirmation of service card.  The Government represented that Government's Exhibit

> The affidavit, filed for the first time on December 23, 2014, eviscerates any suggestion that [Defendant] bears the fault for the Finnish authorities' delay in prosecution. Specifically, Detective Inspector Alaspää swears that [Defendant] called her on May 8, 2006, after he was contacted by U.S. law enforcement authorities regarding a request for an interview. According to the Detective Inspector, [Defendant] initiated the contact and indicated his willingness to "take care of the matter" during a possible midsummer family vacation to Finland. Over subsequent email and telephone conversations through June, [Defendant] indicated that the family's travel plans were "more or less uncertain." Rather than deal with this uncertainty, the Finnish police opted to have [Defendant] interviewed in Washington, D.C. [Defendant] voluntarily complied with this interview request. Thus, the affidavit demonstrates that (a) [Defendant] voluntarily contacted the Finnish authorities, (b) Finnish police maintained direct contact with [Defendant] over a matter of months, and (c) [Defendant] repeatedly affirmed both his whereabouts and his willingness to cooperate. Despite these affirmations, however, the Finnish police *never* requested that [Defendant] return to Finland. And most importantly, they failed to bring any charges against him until October 2007, well after the five-year U.S. statute of limitations had expired.

Defendant's Reply (Document No. 40) at 7-8 (internal citations omitted). Defendant states further that this affidavit was not available to him when the court made its original determination and that its very presence now justifies the court's reconsideration of his case. *Id.* at 5, 9. All in all, Defendant contends that Detective Inspector Alaspää's affidavit bolsters his argument that the circumstances surrounding his extradition are analogous to the factual circumstances as presented in *United States v. Singleton*, 702 F.2d 1159 (D.C. Cir. 1983), rather than *McGowen*. *Id.* at 8-9. Defendant contends that he remained "readily accessible" to the Finnish authorities and, therefore, the statute of limitations should not have been tolled as contemplated by the *McGowen* "mere absence" standard. *Id.* Thus, barring his extradition at this juncture. *Id.* Moreover, Defendant avers that this court's initial analysis of *Singleton* and its application to the

---

1 accompanied the affidavit of Detective Inspector Alspää and out of an abundance of caution, needed to be brought to the attention of both Defendant and the court. The court permitted the Government to enter this exhibit into evidence, over the objection of counsel for Defendant.

present factual scenario was too narrow.  In so doing, Defendant contends that *Singleton* and *McGowen* actually present conflicting conclusions, warranting a reinterpretation the respective authorities.  Defendant concludes, therefore, that a more expansive reading of *Singleton* along Defendant's own innocent intentions with regard to his failure to return to Finland should lead the court to find that the statute of limitations should not have been tolled under the instant circumstances.

Alternatively, Defendant argues that the Court erred in tolling the statute of limitation in "failing to require that the Government prove its allegations supporting tolling by a preponderance of the evidence." Defendant's Memorandum (Document No. 35-1) at 3. Defendant contends that in so doing, "the Government ducked its evidentiary burden by relying on a Finnish court judgment, which in turn relied solely on the Justice Department's own unsupported representation that [Defendant] had been served." *Id.*  This deprives Defendant "of his right under the Treaty to have the Government's tolling evidence under the Finnish statute independently evaluated by a neutral arbiter in the United States." *Id.*

As an additional alternative, Defendant argues that the application of the mere presence standard would violate "his [constitutional] right to engage in interstate and international travel for lawful purposes." Defendant's Reply (Document No. 40) at 9.  Specifically, Defendant notes:

> [U]nder the Court's interpretation of *McGowen*, an accused may only enjoy the protection of a statute of limitations (and thereby ensure his right to a fair and timely trial) by remaining inside the physical boundary of a single jurisdiction for the entire limitations period.  In other words, the accused is forced to abandon his Fifth Amendment right to travel for legitimate (non-evasive) purposes in order to preserve the protections of the statute of limitations.  This Hobson's choice, in which the accused can either exercise his right to travel or his right to a fair trial—but not both—violates the Due Process Clause of the Fifth Amendment.

*Id.* at 10. Defendant argues further that such restrictions would be archaic in nature and utterly unrealistic given every day circumstances that may cause one to leave a particular jurisdiction, without the intent to flee prosecution.

Lastly, Defendant requests that in the even the court certifies his extradition to Finland, his current bail status, personal recognizance, be continued during the pendency of *habeas corpus* proceedings. *Id.* at 14. In support of this request Defendant notes (1) none of the circumstances that supported the court's initial grant of bail have changed; (2) Defendant has demonstrated his amenability to these bail conditions by his continued compliance; (3) Defendant poses no risk of flight; and (4) Defendant is 71 years-old, owns a home in the District of Columbia, and has surrendered his passport per the court's instructions. *Id.* at 15-16. Therefore, taking all of these factors under consideration, Defendant contends that a continuation of his current bail status is warranted. *Id.*

The Government presents several counter arguments with regard to Defendant's contentions. First, the Government contends that Defendant has failed to meet his burden with regard to reconsideration by this court. *See* Government's Opposition to Defendant's Motion to Reconsider ("Government's Opposition") (Document No. 37) at 1. Specifically, the Government avers that this court should deny Defendant's Motion for Reconsideration "because there is no injustice that would result from the court's ruling," as contemplated by the applicable authorities. *Id.* at 1-2; *see also Loumiet v. United States*, Civil Action No. 12-1130, 2014 WL 4100111, at *2 (D.D.C. August 21, 2014). With regard to *McGowen*, the Government avers that Defendant concedes that *McGowen* and the "mere absence rule" are still binding authorities upon this jurisdiction. Moreover, given such a concession, Defendant's argument for reconsideration is without merit. In support of this contention, the Government states:

> All of the facts which [Defendant] uses to support its arguments for reconsideration, namely, that 1) [Defendant] did not hide the fact that he was leaving Finland from various parts of the Finnish "government", 2) "Finnish authorities" were aware of [Defendant's] U.S. location, and 3) [Defendant] had multiple contacts with the Finnish embassy while living in the U.S., are facts which the court considered prior to its ruling. Moreover, they are not facts that are relevant to this motion, especially in light of the fact that [Defendant's] intent to flee was not the controlling issue in the court's decision.

Government's Opposition (Document No. 37) at 3 (internal citations omitted). Moving to the applicable authority, the Government contends that "the defense has cited no controlling or significant change in the law, or the facts of this case since the submission of the issues to the Court." *Id.* Moreover, the Government states that "[t]he court's decision in *McGowen* is still the controlling decision" and that the court should "decline to extend reconsideration on this inappropriate basis" as supported by Defendant. *Id.*

The Government further avers that the facts of the instant case are not sufficiently distinguishable from *McGowen* to justify a departure from that established authority. *Id.* at 3-4. In support, the Government notes that (1) like *McGowen*, Defendant voluntarily absconded from the jurisdiction after committing a crime; and (2) as established by *McGowen*, Defendant became a "person fleeing from justice" simply upon absconding, regardless of his state of mind. *Id.* With regard to the affidavit of the Finnish Detective Inspector, the Government contends that the affidavit, if anything, shows a great deal of vacillation on the part of Defendant, in that he originally indicated that he would return to Finland, and then backed away from that declaration with the passage of time. The Government contends that this "cat-and-mouse" type of approach as employed by Defendant only bolsters the argument that he was in fact fleeing prosecution, rather than conspicuously availing himself to the requests of the Finnish authorities as Defendant represents. The Government counters Defendant's contention that *McGowen* and *Singleton*

produce inherently contradictory results that warrant a reinterpretation of the authorities.  The Government argues that the "mere absence rule" as presented *McGowen* is applicable to factual scenarios in which a defendant, after having committed a crime, physically absconds from a particular jurisdiction, thus tolling the applicable statute of limitations.  The Government argues that *McGowen* presents a general rule of sorts when it comes to a determination of a defendant's fugitivity.  That being said, the Government contends that *Singleton* is applicable to factual scenarios in which a defendant has not physically absconded from a particular jurisdiction, but could, nonetheless, take measures to avoid prosecution, even while physically remaining in the jurisdiction.  Such circumstances warrant consideration of different factors, specifically, the defendant's intentions in order to determine whether the statute of limitations should be tolled.

      Second, the Government avers this court correctly determined in its Memorandum Opinion that there is sufficient evidence to show that the Finnish government did in fact serve Defendant with a summons to appear before the District Court of Turku to answer for the charges brought against him in that jurisdiction, thus tolling the statute of limitations as of June 26, 2009.  *See* Government's Opposition (Document No. 37) at 4; *see also In re Liuksila*, 2014 WL 5795244, at *13-14.  The Government avers that this court was not obligated, as Defendant argues, to consider additional evidence in determining whether Defendant was served, as the evidence considered was properly authenticated and certified in accordance with the applicable authorities.  *See* Government's Opposition (Document No. 37) at 5-7.  Therefore, the Government concludes that Defendant's argument in this regard is also without merit.  *Id.*

      Lastly, the Government requests that the court change the conditions of Defendant's release from personal recognizance to the High Intensity Supervision Program to include GPS monitoring in the event that the court certifies Defendant's extradition.  In support, the

Government contends that such certification would present a substantial change in circumstances sufficient enough to warrant the imposition of additional measures to ensure Defendant's future appearances.

**APPLICABLE STANDARD**

*Motion for Reconsideration of Interlocutory Decisions*

"Although the Federal Rules do not specifically provide for motions for reconsideration in criminal cases, the Supreme Court has recognized, in *dicta*, the utility of such motions." *United States v. Ferguson*, 574 F.Supp.2d 111, 113 (D.D.C.2008). This Court has adopted such a philosophy by regularly entertaining motions for reconsideration in a criminal context, applying the analogous Federal Rules of Civil Procedure. *See United States v. Sunia*, 643 F.Supp 2d 51, 60-61 (D.D.C. 2009) (applying analysis presented by Fed. R. Civ. P. 54(b) to criminal defendants' motion to reconsider partial denial of motion to dismiss); *see also United States v. Booker*, 613 F.Supp. 2d 32, 34 (D.D.C. 2009) (applying analysis presented by Fed. R. Civ. P. 59(e) to criminal defendant's motion for reconsideration of decision denying a motion to vacate the conviction under 28 U.S.C. § 2255; *see also United States v. Slough*, Criminal No. 08-360, Criminal No. 14-107, 2014 WL 3734139, at *2 (D.D.C. July 29, 2014) (applying Fed. R. Civ. P. 54(b) to criminal defendants' motion for reconsideration of decision excluding testimony).

That being said, "[t]he standard of review for interlocutory decisions differs from the standards applied to final judgments under Federal Rules of Civil Procedure 59(e) and 60(b)." *Williams v. Savage*, 569 F.Supp.2d 99, 108 (D.D.C.2008). "Federal Rule of Civil Procedure 54(b) . . . permits a district court to revise an order 'that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties'—i.e. an interlocutory order—'at any time

before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.'" *Slough*, 2014 WL 3734139, at *2 (quoting Fed. R. Civ. P. 54(b). "In particular, reconsideration of an interlocutory decision is available under the standard, 'as justice requires.'" *Judicial Watch v. Dep't of Army*, 466 F.Supp.2d 112, 123 (D.D.C. 2006). "Considerations a court may take into account under this standard include whether the court 'patently' misunderstood a party, made a decision beyond the adversarial issues presented to the court, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law or facts has occurred since the submission of the issue to the Court. *Loumiet*, 2014 WL 4100111, at *2 (internal citations omitted). "In this Circuit, it is well-established that 'motions for reconsideration,' whatever their procedural basis, cannot be used as 'an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier.'" *Id.* (internal citations omitted). "In order for justice to require reconsideration, logically, it must be the case that, some sort of 'injustice' will result if reconsideration is refused. That is, the movant must demonstrate that some harm, legal or at least tangible, would flow from a denial of reconsideration." *Cobel v. Norton*, 355 F.Supp.2d 531, 540 (D.D.C. 2005). Moreover, "even if the appropriate legal standard does not indicate that reconsideration is warranted, the Court may nevertheless elect to grant a motion for reconsideration if there are other good reasons for doing so." *Id.*

With regard to the instant case, it appears that the court's decision denying Defendant's Motion to Dismiss as presented in *In re Liuksila*, is interlocutory in nature, given that the court's certification of Defendant's extradition is only the first proceeding of several that could ultimately culminate in Defendant's extradition to Finland. This court's decision did not present

the finality contemplated by Rules 59 and 60 of the Federal Rules of Civil Procedure, therefore, the court's analysis will continue within the confines of Rule 54 of the Federal Rules of Civil Procedure and the applicable standard. The court notes that the parties, while omitting discussion of motions to reconsider in a criminal context, nevertheless, appear to have correctly ascertained interlocutory nature of the court's decision based the authorities presented in their submissions and on the record at the February 4, 2015 hearing. *See*, *e.g.*, Defendant's Motion for Reconsideration (Document No. 35) at 4; Government's Opposition (Document No. 37) at 1-2.

**DISCUSSION**

***The Court Correctly Applied McGowen in Tolling the Statute of Limitations***

As discussed at length above, in summation, Defendant, in his Motion for Reconsideration, challenges the court's application of *McGowen v. United States* in deciding to toll the applicable statute of limitations as discussed its Memorandum Opinion (Document No. 15) filed on November 7, 2015. Defendant contends that the court erroneously applied the "mere absence rule" as established by the *McGowen* Court, when it was obligated to consider additional factors as presented in *United States v. Singleton*. Defendant avers that the "as justice requires" standard has been met, thus warranting reconsideration by the court. However, the court is not inclined to agree. As conceded, by Defendant, both in his written submissions and by oral proffer, *McGowen v. United States* is still the controlling authority in this jurisdiction. Moreover, to the knowledge of the court, there has been no recent decision overturning *McGowen*, therefore, it is still applicable to the instant case. The *McGowen* Court, in addressing the particular issue presented here, explains:

> To be a fugitive from justice, in the sense of the act of congress regulating the subject under consideration, it is not necessary that the party charged should have left the state in which the crime is

> alleged to have been committed, after an indictment found, or for the purpose of avoiding a prosecution anticipated or begun, but simply that having within a state committed that which by laws constitutes a crime, ***when he is sought to be subject to its criminal process to answer for his offence, he has left its jurisdiction, and is found within the territory of another***. The Supreme Court first used that language with regard to the extradition law, but afterwards expressly applied it to the statute here involved. Accordingly appellant, when he left the District after committing forgery, was a person fleeing from justice, ***regardless of his motive in leaving***.

105 F.2d at 792 (emphasis added) (internal citations and quotation marks omitted). Using this logic, the *McGowen* Court found that the applicable statute of limitations as applied to the defendant was tolled. *Id.* The factual scenario as presented in *McGowen* is analogous to the instant case. Simply put, Defendant, like the defendant in *McGowen*, voluntarily absconded from the jurisdiction after committing a crime therein. Thus, in accordance with the established authority, the statute of limitations must be tolled in the instant case. With regard to *Singleton*, the factual scenario as presented there provides a nuance to the overall discussion of tolling the applicable standard of limitations. The *Singleton* Court, addressed the issue of 18 U.S.C. § 3290 and "whether one who does not physically flee the jurisdiction can be a fugitive from justice in the sense contemplated by this section," an issue of first impression for this Circuit. 702 F.2d 1159, 1168-69. In relevant part, the *Singleton* Court states:

> We agree that flight from the jurisdiction is not required to trigger the tolling provision. It would be neither logical nor supportive of the policy underlying section 3290 to interpret the law in such a way that one who leaves and is found without the jurisdiction is "fleeing justice" regardless of his intent, while one who actively evades authorities and conceals himself within the jurisdiction can receive the benefit of the statute of limitations.

*Id.* (footnote omitted). Here, the *Singleton* Court provided a nuanced discussion as to the issue of tolling, given that the *Singleton* defendant had not physically left the jurisdiction, a clear distinction from *McGowen*. *Id.* However, as the *Singleton* Court noted, one could certainly seek to avoid

Case 1:13-mj-00970-DAR Document 45 Filed 01/06/16 Page 13 of 14

In re Liuksila 13

prosecution and flee from justice even while physically remaining in a jurisdiction. *Id.* Applying the *McGowen* approach in such a circumstance would provide a defendant with unjust benefits with regard to the statute of limitations. Therefore, the *Singleton* Court was obligated to consider the defendant's intentions in its determination of whether the statute of limitations should have been tolled. As the court previously explained, "[t]he [*Singleton*] Court did not revisit the *McGowen* Court's holding, concluding that it was 'unnecessary ... to decide whether the rule of law set forth in th[o]se early cases—that mere absence from the jurisdiction is sufficient to toll the statute—retains its vitality today.'" *In re Liuksila*, 2014 WL 5795244, at *8 (internal citation omitted). In the instant case, the facts surrounding the Defendant's applicable statute of limitations, like *McGowen*, are unequivocally distinguishable from those as presented in *Singleton*. Therefore, Defendant is not entitled to the same analysis as applied by the *Singleton* Court. As to the new evidence presented at the February 4, 2015 hearing, the court is not convinced that it has any bearing with regard to the court's decision here. As explained in detail in the November 7, 2015 Memorandum Opinion, Defendant's mere absence from Finland was sufficient enough to toll the statute of limitations in accordance with the applicable authorities. Inquiry into Defendants alleged intentions are, therefore, wholly unnecessary. The court finds that reconsideration is not warranted "as justice requires." Furthermore, the court is not convinced that Defendant will not suffer an injustice due to the court's decision. For those reasons the court will uphold its previous ruling and deny Defendant's Motion for Reconsideration.

### *Defendant's Bail Status*

Having considered the arguments and proffers from both parties regarding Defendant's bail status, the court is inclined to continue defendant's current bail status on personal recognizance. While the court is aware that its ruling presents a change in circumstances for

Defendant, it is not convinced, however, that it presents such a change warranting increased supervision.  The court has observed Defendant's continued appearance at his proceedings before this court as well as his continued compliance with his release conditions.  In the interest of providing the least restrictive means to ensure his appearance, such factors must weigh heavily upon the court's consideration.  For those reasons, the court will continue Defendant's current bail status on personal recognizance pending the resolution of his *habeas* proceedings.

**CONCLUSION**

For the reason set forth herein, Defendant's Motion for Reconsideration (Document No. 35) will be denied and the court will certify Mr. Liuksila's extraditability as to the charge of aggravated fraud by a debtor.  A separate order and certificate of extraditability accompanies this Memorandum Opinion.

                                                                                          /s/
                                                                            DEBORAH A. ROBINSON
                                                                            United States Magistrate Judge

Date: January 5, 2016